FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>MFC Capital Funding, Inc. | DEFENDANTS<br>Valor Equity Partners,VWR Holdings, LLC, Valor Management Corp., WRS Holdings, LLC, WRS, LLC et al. |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Alexander G. Benisatto,Esq., Shapiro Croland et al.<br>411 Hackensack Ave., Hackensack, NJ 07601 (201) 488-3900 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☑ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Breach of fiduciary duty, fraud, negligent misrepresentation, conversion

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
       actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce/sep property settlement/decree
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☑ 02-Other (e.g. other actions that would have been brought in state court if
       unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 6,000,000 |

Other Relief Sought

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>WRS Holdings, LLC, et al. | | BANKRUPTCY CASE NO.<br>10-28457 |
| DISTRICT IN WHICH CASE IS PENDING<br>New Jersey | DIVISIONAL OFFICE<br>Newark | NAME OF JUDGE<br>Donald H. Steckroth |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE<br>Ferguson |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>February 9, 2012 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Alexander G. Benisatto | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court.  In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system.  (CM/ECF captures the information on Form 104 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties.**  Give the names of the parties to the adversary proceeding exactly as they appear on the complaint.  Give the names and addresses of the attorneys if known.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In the matter of:
WRS Holdings, LLC et al.

                                        Debtor

MFC Capital Funding, Inc.

                                        Plaintiff(s)

                                                      Case No.    10-28457

v.

Valor Equity Partners, VWR Holdings, LLC,
Valor Management Corp., WRS Holdings, LLC        Adversary No.  _____
WRS, LLC  et al.

                                        Defendant(s)

## SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
## IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | U.S. Bankruptcy Court - D.N.J.<br>50 Walnut Street<br>Newark, NJ 07102 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of<br>Plaintiff's Attorney | Alexander G. Benisatto, Esq.<br>Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP<br>411 Hackensack Avenue<br>Hackensack, NJ 07601 |
|---|---|

If you make a motion, your time to answer is governed by Fed.R.Bankr.P. 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

| Address | Courtroom: |
|---|---|
|  | Date and Time: |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

                                    James J. Waldron, Clerk

Date: _____          By: _____
                                                    Deputy Clerk

**MEDIATION OF ALL DISPUTES IS ENCOURAGED AND IS AVAILABLE PURSUANT TO D.N.J. LBR 9019-2.  THE PRACTITIONER'S GUIDE TO THE MEDIATION PROCESS IS AVAILABLE IN THE BANKRUPTCY COURT CLERK'S OFFICE, IN EACH COURTROOM, AND ON THE COURT'S WEB SITE: www.njb.uscourts.gov. THE GUIDE CONTAINS AN OVERVIEW OF THE MEDIATION PROCESS, SAMPLE FORMS, THE REGISTER OF MEDIATORS AND APPLICABLE LOCAL RULES.**

*rev.12/1/09*

Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
SCHIFF HARDIN LLP
666 Fifth Avenue, 17th Floor
New York, NY 10103
T:  212.753.5000
F:  212.753.5044

Alexander G. Benisatto, Esq.
SHAPIRO, CROLAND, REISER
   APFEL & DI IORIO, LLP
411 Hackensack Avenue, 6th Floor
Hackensack, NJ  07601
T:  201.488.3900
F:  201.488.9481

*Attorneys for Plaintiff,*
*MFC Capital Funding, Inc.*

| | |
|---|---|
| In re:<br><br>WRS HOLDINGS, LLC, et al.,<br><br>        Debtors.<br><br>MFC CAPITAL FUNDING, INC. a Minnesota corporation,<br><br>        Plaintiff,<br><br>      vs.<br><br>VALOR EQUITY PARTNERS, VWR HOLDINGS, LLC, VALOR MANAGEMENT CORPORATION, WRS HOLDINGS, LLC, WRS, LLC, WOODS RESTORATION SERVICES OF MONTCLAIR, NJ, LLC, WOODS RESTORATION SERVICES, LLC, WOODS RESTORATION SERVICES OF S.C., LLC, ENVIRONMENTAL REMEDIATION CONCEPTS, LLC, WRS, INC., ROBERT WASIELEWSKI, ANTONIO GRACIAS, BRADLEY SHEFTEL, JONATHAN SHULKIN, CHESTER R. DUNICAN, NELSON SUN, ABC COMPANIES 1-10, JOHN DOE 1-10 and JANE DOE 1-10 (fictitiously named individuals and entities),<br><br>        Defendants. | UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Chapter 7<br><br>Case No. 10-28457 (DHS)<br><br><br><br><br><br>Adv. Pro. No. _____<br><br><br><br><br>**COMPLAINT** |

MFC Capital Funding, Inc. ("MFC" or "Plaintiff") for its Complaint against Valor Equity Partners ("VEP"), VWR Holdings, LLC ("VWR"), Valor Management Corporation ("Valor Management") (VEP, VWR and Valor Management, collectively referred to as "Valor"), WRS Holdings, LLC, f/k/a Woods Restoration Holdings, LLC ("Holdings"), WRS, LLC, f/k/a Woods Restoration Services, LLC ("W-LLC"), Woods Restoration Services of Montclair, NJ, LLC ("Woods NJ"), Woods Restoration Services, LLC ("Woods Restoration"), Woods Restoration Services of S.C., LLC ("Woods SC"), Environmental Remediation Concepts, LLC ("Environmental"), WRS, Inc. ("W-Inc.") (Holdings, W-LLC, Woods NJ, Woods Restoration, Woods SC, Environmental and W-Inc., collectively referred to as "WRS" or the "WRS Entities"), Robert Wasielewski ("Wasielewski"), Antonio Gracias ("Gracias"), Bradley Sheftel ("Sheftel"), Jonathan Shulken ("Shulken"), Chester R. Dunican ("Dunican"), Nelson Sun ("Sun"), ABC Companies 1-10, John Doe 1-10 and Jane Doe 1-10 (collectively, "Defendants"), alleges as follows:

## Nature of the Action

1.    This is an action by MFC against each of the Defendants for negligent misrepresentation, breach of fiduciary duty, unjust enrichment, common law fraud and conversion.  The action arises as a result of the Defendants' material misrepresentations and inflation of collateral values to Plaintiff, resulting in damage to Plaintiff.

## Jurisdiction and Venue

2.    This is an adversary proceeding arising under Title 11 of the United States Code (the "Bankruptcy Code") and arising in and related to a case under the Bankruptcy Code within the meaning of 28 U.S.C. § 1334(b).

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (D), and venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**The Parties**

4.      Plaintiff, MFC, a Minnesota corporation, with its principal place of business at 111 South Wacker Drive, Suite 5050, Chicago, Illinois 60606, is the largest secured lender to defendant WRS.

5.      On information and belief, defendant VEP is a middle market private equity firm with its principal place of business at 200 South Michigan Avenue, Suite 1020, Chicago, Illinois 60604.

6.      On information and belief, defendant Valor Management is a Delaware corporation, with its principal place of business at 200 South Michigan Avenue, Suite 1020, Chicago, Illinois  60604.

7.      On information and belief, defendant VWR is a Delaware limited liability company, and the holder of 4900 preferred units and 84,000 (or 84%) of the outstanding common units in defendant Holdings.

8.      On information and belief, defendant Holdings f/k/a Woods Restoration Holding, LLC, is a Delaware limited liability company, with its principal place of business at 22 Riverview Drive, Suite 101, Wayne, New Jersey 07470, a Chapter 7 debtor, and the sole member and 100% equity holder of W-LLC.

9.      On information and belief, defendants VEP, VWR, Valor Management and Holdings are "affiliates," as that term is defined in Section 101(2) of the Bankruptcy Code.

3

10.     On information and belief, defendant W-LLC is a Delaware limited liability company and a Chapter 7 debtor, with its principal place of business at 22 Riverview Drive, Suite 101, Wayne, New Jersey 07470.  W-LLC is the holder of 100% of the equity of Woods Restoration, Woods SC, Woods NJ, W-Inc. and Environmental.  A chart describing the corporate structure of the WRS Entities is attached hereto as Exhibit A.

11.     On information and belief, defendant Woods Restoration is a Florida limited liability company and a Chapter 7 debtor, with its principal place of business at 22 Riverview Drive, Suite 101, Wayne, New Jersey 07470.

12.     On information and belief, defendant Woods SC is a Chapter 7 debtor, with its principal place of business at c/o WRS, LLC, 22 Riverview Drive, Suite 101, Wayne, New Jersey 07470.

13.     On information and belief, defendant Woods NJ is a Chapter 7 debtor, with its principal place of business at c/o WRS, LLC, 22 Riverview Drive, Suite 101, Wayne, New Jersey 07470.

14.     On information and belief, defendant Environmental is a Chapter 7 debtor, with its principal place of business at c/o WRS, LLC, 22 Riverview Drive, Suite 101, Wayne, New Jersey 07470.

15.     On information and belief, defendant W-Inc. is a Delaware corporation and a chapter 7 debtor, with its principal place of business at 22 Riverview Drive, Suite 101, Wayne, New Jersey 07470.

16.     On information and belief, defendant Wasielewski was at all times relevant hereto a principal, officer and/or director of Valor and the acting Chief Financial Officer of WRS, with a residence of 396 Hawthorne Lane, Winnetka, Illinois 60093.

17.     On information and belief, defendant Gracias is a resident of Illinois and was at all times relevant hereto a principal, officer and/or director of Valor, and on the board of directors of WRS.

18.     On information and belief, defendant Sheftel is a resident of Illinois and was at all times relevant hereto a principal, officer and/or director of Valor, and on the board of directors of WRS.

19.     On information and belief, defendant Shulkin is a resident of Illinois and was at all times relevant hereto a principal, officer and/or director of Valor, and on the board of directors of WRS.

20.     On information and belief, defendant Dunican was at all times relevant hereto a principal, Chief Operating Officer and director of WRS with a residence of 25 West End Avenue, Niantic, Connecticut 06357.

21.     On information and belief, defendant Sun was at all relevant times hereto an employee of Valor, deployed full time to work at WRS from at least early 2010 through May 2010, and is a resident of Illinois,

22.     Defendants, ABC Companies 1-10, John Does 1-10 and Jane Does 1-10, are fictitious persons and/or entities whose identities are not currently known to MFC, but are believed to have participated in the conduct complained of herein and responsible for the resulting damage to MFC.

## Background

A.     WRS' Directors and Officers

23.     At all times relevant hereto, WRS' board of directors was comprised of defendants Gracias, Sheftel, Shulkin, Dunican and Philip Woods ("Woods") (collectively, the "Directors").

5

24.    At all times relevant hereto, Dunican was also WRS' Chief Operating Officer, Karl Muench ("Muench") was WRS' Comptroller and Wasielewski was WRS' acting Chief Financial Officer, supervising and controlling Muench.   Hereafter, Dunican and Wasielewski may collectively be referred to as the "Officers".

B.    WRS' Bankruptcy Filing

25.    On June 16, 2010 (the "Petition Date"), each of the WRS Entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.   Through and until July 20, 2010, the WRS Entities remained in possession and in control of their assets and businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

26.    On July 20, 2010, the WRS Chapter 11 cases were converted to Chapter 7 cases, and Charles M. Forman was appointed Chapter 7 trustee (the "Trustee").

C.    Indebtedness

27.    On or about November 18, 2005, pursuant to a certain Credit Agreement ("Credit Agreement") and Security Agreement ("Security Agreement"), by and among MFC, Holdings, and certain of WRS' subsidiaries and affiliates, including Woods NJ, W-LLC, Woods S.C, Environmental, W-Inc., and Woods Restoration (as each may have been amended, modified or supplemented from time to time), WRS became indebted to MFC and MFC advanced funds to WRS, secured by assets and property of WRS.[1]

28.    As of the Petition Date, the WRS Entities and their respective bankruptcy estates were indebted to MFC in the aggregate amount of $5,870,130.04, plus such additional accrued but unpaid interest, costs, fees and expenses (the "Indebtedness") due pursuant to the Loan

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such terms in the Credit Agreement and/or Security Agreement to the extent defined therein. Hereinafter, the Credit Agreement, Security Agreement and all other documents that may have been executed in connection therewith shall be referred to collectively as the "Loan Documents".

Documents, which obligations constitute legal, valid and binding obligations of WRS and their respective estates, enforceable in accordance with their terms, and no objection, offset, defense, or counterclaim of any kind or nature to such obligations exists. Since the Petition Date, interest, legal fees and other costs due under the Loan Documents continue to accrue.

29.    To secure the Indebtedness, WRS granted MFC a first priority security interest and lien in and against all Collateral (which is comprised of all assets of the WRS Entities, other than certain motor vehicles) and the proceeds thereof, which are: (i) valid, binding, perfected, enforceable first-priority liens on such Collateral securing the Indebtedness, and (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law.

D.    Representations, Warranties and Covenants

30.    In order to induce MFC to extend credit under the Loan Documents, the WRS Entities (by and through Valor and their respective directors and officers) each made certain unconditional representations, warranties and covenants upon which MFC relied in advancing funds to WRS prior to the Petition Date.

31.    With respect to Accounts scheduled, listed or referred to on any Borrowing Base Certificate ("BBC") as Eligible Accounts, WRS represented that as of the date of such BBC: (a) they are genuine and are in all respects what they purport to be; (b) they represent undisputed, bona fide transactions the performance of which has been completed by such Borrower in accordance with the terms and provisions contained in the documents delivered to MFC with respect thereto; (c) WRS has no knowledge of any fact or circumstance which would tend to impair the validity or collectability thereof; and (d) each of the WRS Entities agrees to notify MFC with respect to any Accounts scheduled, listed or referred to on the most recent BBC or on the most recent Accounts Trial Balance as Eligible Accounts with respect to which the

warranties in Section 3.4 of the Security Agreement are not true.  See, Section 3.4 of the Security Agreement.

32.    Each of the WRS Entities further represented that with respect to Eligible Accounts, WRS would promptly notify MFC in writing if any of its then existing Accounts previously listed as an Eligible Account on the current BBC are no longer Eligible Accounts. See, Section 4.8(c) of the Security Agreement.

33.    To further the attachment, perfection and first priority of, and the ability of MFC to enforce, MFC's Liens in or on the Collateral each of the WRS Entities agreed to take the following actions with respect to the deposit accounts: For each deposit account that WRS at any time opens or maintains, WRS shall pursuant to an agreement (each, a "Control Agreement") in form and substance reasonably satisfactory to MFC, either: (i) cause the depository bank to comply at any time with instructions from MFC to such depositary bank directing the disposition of funds from time to time credited to such deposit account, without further consent of WRS, or (ii) arrange for MFC to become the customer of the depositary bank with respect to the deposit account, with WRS being permitted, only with the consent of MFC, to exercise rights to withdraw funds from such deposit account.  See, Section 4.5 of the Security Agreement.

34.    Pursuant to the Loan Documents, the WRS Entities each had the affirmative continuing obligation to: (a) represent accurately to MFC the value of all Collateral against which MFC would lend, and (b) take steps to assure that MFC's lien on all of WRS' deposit accounts was perfected.  Accordingly, each BBC submitted by WRS to MFC pursuant to the Loan Documents was required to be executed by a director or officer of WRS, certifying that "[a]ll information contained in the Borrowing Base Certificate is true, correct and complete." See, Section 3.4(a) of the Security Agreement.

E.    Misrepresentations and Breach of Fiduciary Duty

35.    Based upon all available financial information regarding WRS' financial condition in the months before and after the Petition Date, the WRS Entities were insolvent, were experiencing a dramatic decline in the level of their business and, upon information and belief, were the subject of several lawsuits that, according to WRS, materially affected the ability of WRS to remain in business and had severely impaired cash flow.

36.    At all times relevant hereto, and since at least mid-2008, defendant Valor and its officers, Peter Goldman, Wasielewski, Shulkin, Sun, and others were "deeply involved in the management, operations, direction and business planning of WRS".

37.    Upon information and belief, for years prior to the Petition Date, WRS had a Management Services Agreement ("MSA") with Valor Management pursuant to which Valor was paid up to $250,000.00 per year, plus reimbursement of more than $100,000.00 per year in travel and lodging expenses incurred by Valor's officers (many of whom also served on WRS' Board of Directors).

38.    As of December 31, 2009, WRS was current with all amounts due Valor under the MSA. Although WRS was experiencing severe cash flow constraints in the months prior to the Petition Date, Valor continued to withdraw its "management fees" and "related expenses" from WRS' available yet dwindling receipts, while WRS contemporaneously increased draws and, ultimately, overadvances under the Loan Documents.

39.    In addition to control of WRS' financial affairs by the Directors (several of whom are or were also Valor officers, employees and/or directors), Valor had not less than two full time employees working physically at and "interacting with WRS" for months prior to the Petition Date, including without limitation, defendants Wasielewski and Sun.

40.    For well over a year prior to the Petition Date, Valor (by and through Wasielewski, Shulkin, Sun and others) worked on a regular, if not daily basis, with WRS' management (including Dunican, Muench and other employees) on financial reporting to MFC.

41.    In fact, for months prior to and after March 2010, Wasielewski acted as WRS' Chief Financial Officer, executing and certifying several of the BBCs on which MFC relied in making advances to WRS under the Loan Documents.

42.    Moreover, Peter Goldman (a Valor portfolio manager) and Doug Fumagalli (Valor's director of human resources), hired WRS' former Chief Financial Officer, Vincent P. Tuzzio, Jr. ("Tuzzio"), instructing Tuzzio that "he works for Peter Goldman and that he was at WRS to please Peter Goldman… and the guys at Valor."

43.    At all times relevant hereto, Valor, by and through the Directors and Officers, exercised full control over WRS' financial affairs, operations, business planning and reporting obligations to MFC despite the fact that, according to Tuzzio, WRS' former Chief Financial Officer, they "were not well versed enough to understand the full nature of the company and the construction aspect of the business."

44.    In the months immediately preceding the Petition Date, by and through their respective Directors and Officers, the WRS Entities negligently misrepresented the stated amount of their accounts receivables by inflating their value by at least $1,245,260.00 on the BBCs presented to MFC pursuant to the Loan Documents (the "Double Billing"), thereby obtaining unearned loan proceeds from MFC, and wrongfully accumulating cash from MFC based on misleading financial information.

45.     Without informing MFC prior to the Petition Date, WRS reversed not less than $1,245,260.00 in pre-petition Double Billing of accounts receivables, which was not disclosed to MFC until after repeated requests by MFC for an updated BBC following the Petition Date.

46.     Significantly, in early May 2010, Valor, by and through defendant Wasielewski, objected to WRS' Comptroller, Muench, reversing the full amount of the Double Billing, insisting that "we can't reverse this amount of money…It will cause a big problem…Only reverse $400,000 of it," as opposed to the more than $1,245,260 in actual inflated billing. Upon information and belief, Muench ignored defendant Wasielewski's objections and reversed the full amount of what he knew to be the amount of the actual Double Billing at that time, on or about June 16, 2010.

47.     Had WRS informed MFC of the reversal and ineligibility of the accounts receivables previously reported, WRS would have been in default of their existing loan covenants, triggering a required payment under the Loan Documents of not less than $1,925,415.

48.     The conduct of WRS and Valor prior to the Petition Date, including the following actions, was part of a pattern and practice by Defendants to misrepresent financial information to MFC and others:

(A)     On more than one occasion, from January through April 2010, defendant Wasielewski specifically instructed a Daria Osman (a WRS employee in the accounting department) to bill for work that had not been done, thereby wrongfully generating accounts receivables against which MFC advanced funds to WRS;

(B)     Despite WRS' Comptroller's concerns regarding the gross inaccuracies in WRS' work in progress ("WIP") reporting and the refusal of WRS' Comptroller to provide unreliable (or inaccurate) information regarding WRS' WIP to the accounting firm (with

whom defendant Wasielewski was in regular contact) preparing WRS' 2009 audited financial statement for delivery to MFC (as required by the Loan Documents), defendants Dunican and Wasielewski directed the Comptroller, Muench, to select a certain sample of "jobs that worked", for reporting to WRS' auditors;

(C)    Upon information and belief, in or about August 2009, WRS' former Chief Financial Officer, Tuzzio, was also directed by Valor (by and through Daniel Barlow, a principal of Valor), and defendant Dunican to sign a certification for submission to the United States Small Business Administration grossly overstating WRS' accounts receivables for the purposes of obtaining federal financing for WRS;

(D)    Upon further information and belief, in 2009, Tuzzio was also asked by Dunican to sign a false certification in order to obtain additional/updated insurance coverage (falsely reporting that there were no pending lawsuits against the company that could affect the company when, in reality, there were many such lawsuits), and when Tuzzio refused to sign the false certification, defendant Dunican signed it for WRS; and

(E)    While under Wasielewski's direction as WRS' acting Chief Financial Officer, several of WRS' *certified* BBCs were negligently or fraudulently signed by temporary accounting staff, such as Lynette Yzger-Babano (an employee of Robert Half, a temporary accounting staff company) in her misrepresented capacity as "Comptroller" "acting Chief Financial Officer" and then "President" of WRS when, in fact, she *never* held any of those positions.    Similarly, defendant Wasielewski negligently or intentionally signed certain BBCs in his misrepresented capacity as "acting president of Woods Restoration Services, LLC" when, in reality, he never held that position.

49.    From 2009 through and including the Petition Date, Valor (by and through Wasielewski, Shulkin, Sun and others) and WRS' management (by and through Dunican and, subsequently Muench) oversaw WRS' transition to a new accounting/data management system known as "Timberline."

50.    Despite the Defendants' conduct described above, WRS has blamed the Double Billing on problems encountered in the transition to the new Timberline accounting system, despite the fact that Valor and WRS knew for months prior to the Petition Date that the information it was obtaining from and thereafter reporting to MFC on its BBCs was inaccurate. Nevertheless, Defendants continued to negligently or knowingly misrepresent the inflated value of their accounts receivables to MFC.

51.    However, in the months prior to the Petition Date, WRS' cash flow became tight and WRS increased the amounts borrowed under the Loan Documents in order to, *inter alia*, meet operating expenses.

52.    In the months immediately prior to the Petition Date, WRS' working capital had fallen to such a degree that: (a) WRS "expended the revolving line of credit as much as it [could] be utilized"; and (b) at a meeting of WRS' Board of Directors on May 25, 2010, the Board voted unanimously to approve a $800,000 capital call which, upon information and belief, was never funded.

53.    At the May 25, 2010 Board Meeting, Dunican reported to the Board of Directors that there were "issues with migration from CE to Timberline [that] caused double billing in [the] first quarter."

54.    Notwithstanding Dunican's discussion with the Board of Directors at the May 25, 2010 Board meeting regarding the Double Billing (purportedly caused by the transition to the

Timberline system), neither WRS nor any of its Officers, Directors or employees provided MFC

with any prior notice of the Double Billing (and resulting inflated Account Receivable balances

on WRS' erroneous, but certified BBCs) or the known problems with the transition to the

Timberline system.

55.    In stark contrast to the undisclosed problems allegedly caused by the transition to

the Timberline system, from as early as January 4, 2010, then on January 13, 2010 and again on

May 15, 2010 (more than one month prior to the Petition Date), WRS (by and through

Wasielewski, Shulkin and others) repeatedly assured MFC in writing that "Computer Ease and

Timberline data successfully melded; on track for a 100% Timberline closing in January 2010"

(January 4, 2010), indicated "Timberline completed in early January" (January 13, 2010), and

advised that "[a]s background, in Q1, the New Controller [sic] was dealing with residual

software transition issues emanating from the move from Computer ease [sic] to Timberline.

These are now fully handled." (May 15, 2010).

56.    Accordingly, if there were, in fact, problems with the accounting information

generated as a result of WRS' transition to the Timberline accounting system, WRS (by and

through Valor and its Officers and Directors) misrepresented the status of the company's

transition to the Timberline system, misleading MFC into the alleged erroneous belief that no

such problems existed.

57.    Despite the fact that Valor, WRS and the Officers and Directors allegedly

believed that there were material problems with the accuracy of the financial information at

WRS following the transition to the Timberline accounting system from late 2009 into early

2010, at no point did Valor, WRS or their Directors or Officers disclose that the transition to

Timberline allegedly caused the Double Billing (against which MFC lent in reliance on the

14

certified and apparently grossly inaccurate BBCs) from January 2010 through and until the Petition Date.

58.     Contrary to their unequivocal obligations to provide full disclosure pursuant to Sections 3.4, 4.5, 4.8 and 4.9 of the Security Agreement, WRS failed to disclose the Double Billing until *after* it had filed for protection under the Bankruptcy Code, and only following MFC's demand that WRS produce a new BBC immediately after the bankruptcy filing. That BBC, dated as of the Petition Date, admitted for the first time that WRS had reported Double Billing (or inflated accounts receivable) to MFC in the first quarter of 2010 by at least $1,245,260.00, all with the negligent disregard by its Officers and Directors of their respective duties to MFC.

59.     In addition to the failure of WRS and its Officers and Directors to advise MFC of the damaging pre-bankruptcy Double Billing, in further contravention of the irrefutable mandates of Section 4.5 of the Security Agreement, WRS deposited more than $534,000 of MFC's cash Collateral into an account at the First Jersey Credit Union (as to which they knew MFC had no account control agreement), without prior notice or the consent of MFC, in violation of the Loan Documents.

60.     After the bankruptcy filing, WRS depleted virtually all cash deposited into the First Jersey Credit Union, with no payments made to, or on account of their Indebtedness to, MFC.

61.     WRS' Directors and Officers similarly failed to exercise the appropriate level of care in managing WRS' deposit accounts, in which the proceeds of MFC's Collateral were wrongfully deposited.  For example, shortly after the Petition Date, MFC was advised by Dunican for the first time that: (a) WRS had just discovered a Bank of America account in to

which more than $50,000.00 of MFC's Collateral had been deposited, and (b) that the account was opened under the prior name of one of the WRS Entities. However, the Loan Documents require the WRS Entities to deposit all cash receipts into a blocked account at JPMorgan Chase, N.A.

62.     In addition, immediately prior to the Petition Date, WRS arranged for the payment of not less than $252,949.11 in past-due, pre-bankruptcy withholding taxes. Although the check for the payment of the taxes did not clear the bank until several days after the bankruptcy was filed, the Directors and Officers made every effort to reduce obligations of the company for which they may have had personal exposure, such as employee withholding taxes. The Directors and Officers made no similar effort to protect the interests of MFC, WRS' principal creditor.

63.     Following the Petition Date, WRS rapidly eroded MFC's Collateral, even though it was foreseeable that it would lack the ability or prospect of generating replacement Collateral.

64.     MFC has no prospect of repayment or recovery following WRS' increased pre-bankruptcy borrowing based upon misrepresented Collateral values and, thus, MFC has been irreparably damaged.

65.     MFC was and remains WRS' primary secured lender to whom WRS' Directors and Officers owed an enhanced duty of care as WRS entered the "zone of insolvency" in 2010, ultimately filing for relief under the Bankruptcy Code on June 16, 2010 and thereafter liquidating.

66.     By failing to act in MFC's best interests by increasing loan requests based upon grossly inaccurate Collateral values that they knew or should have known were inflated while

WRS was insolvent, WRS' Directors and Officers violated their fiduciary duties to MFC, thus, further damaging MFC.

F.    Reliance

67.    Pursuant to the Loan Documents, MFC was entitled to rely and, in fact, it was the expectation of the parties that MFC would rely on WRS' representations as to the amount and collectability of the Accounts reflected on the BBCs before advancing funds to WRS.

68.    Section 6.3 of the Security Agreement provides that "[A]ll covenants, agreements, representations and warranties made herein by each Debtor shall, notwithstanding any investigation by Lender, be deemed to be *material to and to have been relied upon by Lender.* *Each request by one or more of Debtors for a Credit Extension shall be deemed to be a* *representation and warranty that each representation and warranty of each Debtor contained in* *this Agreement shall be true and correct in all material respects* on and as of the date of such Credit Extension." [Emphasis added].

69.    MFC justifiably relied on WRS' certified BBCs in making advances under the Loan Documents.

70.    The WRS Entities (by and through their respective Directors and Officers) failed to properly manage and account for their pre-bankruptcy billings, and failed to disclose that their reporting and, therefore, borrowings under the Loan Documents were grossly inflated to MFC's express detriment.

G.    Demand for Damages

71.    As of the Petition Date, the WRS Entities were each indebted to MFC in an amount not less than $5,870,130.04, plus such additional and accrued interest, legal fees, costs and charges as they accrue under the Loan Documents and applicable law ("Current Indebtedness").

72.    The WRS Entities and their Directors and Officers in collaboration with and often at the direction of Valor and its officers, directors and employees, overstated the amount of WRS' accounts receivables, and thereby inflated the Collateral available to borrow against under the Loan Documents, that enabled WRS to obtain loan advances to which they were not entitled.

73.    Because of WRS' admitted Double Billing, the subsequent erosion of MFC's Collateral, and other wrongful acts of the Directors and Officers, MFC is unlikely to realize any material recovery from the Collateral.

74.    MFC is entitled to payment in full of the Current Indebtedness, plus compensatory and punitive damages, attorneys fees and costs, and such other additional relief as the Court deems appropriate.

## COUNT I
### (Negligent Misrepresentation)

75.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

76.    Defendants misrepresented and/or failed to disclose accurately to MFC material facts concerning WRS' BBCs, the inaccuracy of its accounts receivables balances, and the Double Billing.

77.    By entering into the Loan Documents with WRS, MFC justifiably and reasonably relied on the misrepresentations made by and the omissions of Defendants.

78.    As a result of the misrepresentations and omissions on the part of Defendants, Plaintiff did not discover the Double Billing prior to the Petition Date and, thus, has been caused to suffer substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount to be determined at trial, plus interest, attorneys' fees, costs of suit and such other and further relief as is equitable and just.

### COUNT II
### (Breach of Fiduciary Duty)

79.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

80.     By virtue of its position of control over WRS, Valor owed MFC fiduciary duties of care, good faith and fair dealing.

81.     By virtue of their positions as directors of WRS, defendants Gracias, Sheftel, Shulkin and Dunican each owed MFC fiduciary duties of care, good faith and fair dealing.

82.     By virtue of his position as Chief Operating Officer of WRS, defendant Dunican owed MFC fiduciary duties of care, good faith and fair dealing.

83.     By virtue of his position as acting Chief Financial Officer of WRS, defendant Wasielewski owed MFC fiduciary duties of care, good faith and fair dealing.

84.     By engaging in the conduct described above, defendants Valor, Gracias, Sheftel, Shulkin, Wasielewski and Dunican each breached their respective fiduciary duties to MFC.

85.     As a direct and proximate result of defendants Valor, Gracias, Sheftel, Shulkin, Wasielewski and Dunican's breaches of their fiduciary duties to MFC, MFC suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount to be determined at trial, plus interest, attorneys' fees, costs of suit and such other and further relief as is equitable and just.

## COUNT III
### (Common Law Fraud)

86.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein

87.    Defendants misrepresented and/or failed to disclose accurately to MFC material facts concerning the inaccuracy of WRS' BBCs, the inaccuracy of its accounts receivable balances, and the Double Billing.

88.    By entering into the Loan Documents with WRS, and pursuant to the certifications, representations and warranties contained in each BBC delivered by Defendants to MFC, MFC justifiably and reasonably relied on the misrepresentations and omissions of Defendants.

89.    The misrepresentations and omissions were made by Defendants with the intent that MFC rely thereon and the intent that MFC not discover the Double Billing or fraudulent financial reporting while agreeing to continue to make additional advances to WRS under the Loan Documents.

90.    As a result of the fraudulent conduct of these Defendants, MFC has been caused to suffer substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount to be determined at trial, plus interest, attorneys' fees, costs of suit and such other and further relief as is equitable and just.

## COUNT IV
### (Fraud in the Inducement)

91.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein

92.    Defendants misrepresented and/or failed to disclose accurately to MFC material facts concerning the inaccuracy of WRS' BBCs, the inaccuracy of its accounts receivable balances, and the Double Billing.

93.    By entering into the Loan Documents with WRS, and pursuant to the certifications, representations and warranties contained in each BBC delivered by Defendants to MFC, MFC justifiably and reasonably relied on the misrepresentations made by and the omissions of Defendants.

94.    The misrepresentations and omissions were made by Defendants with the intent that MFC rely thereon and the intent that MFC not discover the Double Billing or fraudulent financial reporting while agreeing to continue to make additional advances to WRS under the Loan Documents.

95.    As a result of the fraudulent conduct of these Defendants, MFC, has been caused to suffer substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount to be determined at trial, plus interest, attorneys' fees, costs of suit and such other and further relief as is equitable and just.

## COUNT V
### (Conversion)

96.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

97.     By virtue of conduct more particularly described above, Defendants wrongfully obtained (or directed and charged WRS to obtain) from MFC loan funds advanced by MFC to the WRS Entities, based upon inflated values of their stated accounts receivables, to which they were not entitled.

98.     MFC has made written demand for the return and payment of such loan proceeds, which Defendants have ignored.

99.     As a direct result of Defendants' conduct, MFC has been damaged.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount to be determined at trial, plus interest, attorneys' fees, costs of suit and such other and further relief as is equitable and just.

## COUNT VI
### (Unjust Enrichment)

100.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

101.    When MFC advanced loan proceeds to WRS pursuant to the Loan Documents, it did so in justifiable reliance upon WRS' representations, covenants and warranties made to MFC in the Loan Documents and in each BBC.

102.    WRS' representations, covenants and warranties made in the BBCs that reflected and/or were based upon the Double Billing were false.

103.    As a result of Defendants' wrongful conduct, Defendants have realized a material benefit from Plaintiff, to the material detriment of Plaintiff.

104.    Defendants will be unjustly enriched unless judgment is entered in favor of MFC, and Defendants are compelled to return the wrongfully obtained advances and loan proceeds to MFC.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount to be determined at trial, plus interest, attorneys' fees, costs of suit and such other and further relief as is equitable and just.

Respectfully submitted,

/s/  *Louis T. DeLucia*
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
SCHIFF HARDIN LLP
666 Fifth Avenue, 17th Floor
New York, NY  10103
T:  212.753.51000
F:  212.753.5044

Alexander G. Benisatto, Esq.
SHAPIRO, CROLAND, REISER
 APFEL & DI IORIO, LLP
411 Hackensack Avenue, 6th Floor
Hackensack, NJ  07601
T:  201.488.3900
F:  201.488.9481

*Attorneys for Plaintiff,*
*MFC Capital Funding, Inc.*

Dated:  February 9, 2012

# EXHIBIT A



CH2\10164259.1